(9 Misc. Rep. 574.)

## In re SANDERSON'S WILL.

(Surrogate's Court, Orleans County.    September, 1894.)

1. WILLS—PROOF OF EXECUTION.

One of the subscribing witnesses testified that testatrix said that the paper offered for probate was her will, and that she would like to have her sign it, but the witness did not remember whether testatrix had signed the paper or not. The other witness testified that he signed the paper at the request of testatrix, but that he did not see her sign it. The attestation clause was written by testatrix in proper form, and the date of the will and the signature of testatrix were written with ink different from the body of the will, but the same as the signature of the attesting witness. *Held* sufficient proof that the will was executed as required by law.

2. SAME—SIGNATURE.

A paper is void as a will where it is not signed by testator at the end.

3. SAME—SEPARATE PAPERS.

Decedent left two papers, each in a sealed envelope with an indorsement that it was testatrix's will. The first paper gave the brother and sister of testatrix the use of her property for life, remainder to "persons named on another sheet and inclosed in another envelope, which shall not be opened until after the death of my said brother and sister." Indorsed on the envelope containing the second paper was a statement that it should not be opened until after the death of the brother and sister of testatrix. Both papers bore date on the same day, and were executed in due form. The second paper did not refer to the first. *Held*, that the second paper was not sufficiently identified as that referred to in the first, and therefore could not be taken as part of the will.

Application for the probate of the will of Amanda Sanderson. Granted in part.

Whedon & Ryan, for proponent.
Theodore L. Cross, for contestant.

SIGNOR, S.    The decedent left two papers, each in a separate envelope, sealed.    On one envelope was written:

"Amanda Sanderson's Will.    Shelby, Orleans County, New York."

On the other:

"Amanda Sanderson's Will.    I direct that this shall not be opened until after the death of my brother Stewart and my sister Harriett."

Both indorsements were in the handwriting of the testatrix, but were not signed. In the first envelope was a paper giving the possession and use of all her estate to her brother and sister, and containing this provision:

"And from and after the death of the longest lives of my said brother and sister, I give, devise and bequeath my said estate to persons named on another sheet, and inclosed in another envelope, which shall not be opened until after the death of my said brother and sister."

This paper, as well as the other, purports to have been executed May 28, 1892; and this appears to have been executed in due form. The other envelope contained a paper containing two small bequests, and gives the remainder to Charles Sanderson, names an executor, contains the usual attestation clause, and is signed by two witnesses, and is also signed by the testatrix with the usual attesta-

tion clause.    Between the signature of the testatrix and the attestation clause of the two witnesses these words are inserted:

"I direct my land shall be sold, including what I have heired, and the money securely sent to the foregoing bequests. I direct that my brother Clinton Sanderson shall take charge of my household effects, and 1 direct you to send one-half of the effects to Mrs. Nettie Tracy, of Madison, Madison county, New York. Take one-fourth for yourself, and the remaining one-fourth you may distribute to sister Eleanor Barker's children and to Mrs. Mary S. Parker, as you deem it advisable."

No mention is made of the other paper in this last one. It is also to be noticed that the first paper is written only on one side of each of the half sheets of a sheet of legal cap, so that between the final disposing clause of that paper and the clause appointing an executor there is an entire blank space of one page.

One witness swears:

"Amanda told us she had a couple of papers she wanted us to sign. Said that was her will. Would like to have us sign it. That was all that transpired, that I can remember. Then Mr. Eckerson signed it first, and I signed after him. We both signed both papers. * * * We were both in the room when she said she wanted us to sign it. I think it was after we signed it that she said it was her will. I am not sure whether before or after. I know she said it. She told us to sign both of them. * * * I don't remember whether she signed her name there or not. The words '28th May' and 'ninety-two' and the signature 'Amanda Sanderson' and the witnesses appear to be in the same ink, and different from the rest of the will."

William Eckerson, the other witness, says she handed him the pen to sign his name, and said it was not a very good one.

"She pointed out the line where I should sign. I think that is all. My memory is not as good as it used to be. Some things it bothers me to hear unless people talk very loud. I can't say whether she did or did not say it was her will. * * * She took the papers up and turned and sat at the desk. I did not see her sign them. I think she was folding them up. * * * I think, to the best of my recollection, she folded the papers without writing. I did not hear her say anything about there being a will. She might have said it and I did not hear her."

On cross-examination he says:

"I don't pretend that I can remember everything that was said. * * * She was not a loud-speaking person. I did not specially notice it enough to know whether there was any signature or not. I can't say that the signature was there or was not there."

It seems quite evident from the fact before referred to that the date, the name of the testatrix, and the witnesses' names were all in the same kind of ink, and different from the main body of the will; and that, as the witness remembers, she folded up the papers without signing, after they had signed; as well as her having the pen before they signed, her remark about the pen, and her statement, as remembered by the other witness, that it was her will, as well as her having written the attestation clause, showing that she knew what was required, that she wrote her name with the same pen and ink at some time before the witnesses. So far as the signing in the presence of the witnesses and the acknowledgment of the will, I think those facts are established within the rulings in Re Will of Hunt, 110 N. Y. 278, 18 N. E. 106. The evidence in the case

is simply that the witnesses do not remember whether the will was signed or not. One says he did not observe it enough to know whether the name was there, and the other does not remember whether it was signed in their presence or not. The attestation clause, written by the testatrix, states that it was done. It is conceded that the date, the name of the testatrix, and the names of the witnesses are with a different ink from the body of the will, and are in the same ink. It also appears that she had the pen in her hand before they signed, and handed it to the witnesses to sign, remarking that it was not a very good pen, indicating that she had used it. Under these proofs, and with no proof or circumstance indicating that it was not signed and acknowledged in the presence of the witnesses, I think it should be held that in these respects it was properly signed and acknowledged. The presumptions are in favor of such a conclusion. In re Cottrell, 95 N. Y. 329. The case of In re Will of Mackay, 110 N. Y. 611, 18 N. E. 433, differs from this that in that case the proof was positive that the testator did not sign in the presence of the witnesses, and that the paper was so folded that the signature could not be seen. It is true, as laid down in several cases cited by contestant's counsel, that presumptions will not establish the execution when there is positive proof to the contrary; but such proof is here wanting.

The second paper is void as a will for the reason that it is not signed at the end thereof. After the signature follows the important provisions for a sale of her real estate, and the disposition of her household effects. Sisters of Charity v. Kelly, 67 N. Y. 409; In re Will of Nies, 13 N. Y. St. Rep. 756.

Neither can this second paper stand as a part of the first. It is not sufficiently identified as the paper referred to, nor can a paper containing disposing clauses be, in this way, made a part of a valid will. In re O'Neil, 91 N. Y. 516. Whether a will with a blank space to the extent found in the first paper between the disposing clauses and the clause appointing an executor is signed "at the end thereof" has been several times discussed, but never judicially determined. In re Heady's Will, 15 Abb. Pr. (N. S.) 211; McCord v. Lounsbury, 5 Dem. Sur. 68. This point was not urged in this case, and while it is a question of importance, and the practice one that should not be regarded with favor, leaving room, as it does, for gross frauds by inserting in the blank space disposing clauses not made by the testator, or not properly authenticated, yet in this case, as the will is all in the handwriting of the testatrix, and was apparently all written at the same time, I do not think that the will should be refused probate for this reason. Neither should the fact that there is a reference to a paper in the valid will which cannot be identified have the effect of nullifying the will. For these reasons the first paper may be admitted as a valid will, and the second refused probate. Ordered accordingly.