In the Matter of the Probate of the Last Will and Testament of LEWIS R. BLAIR, Deceased.

WILLIAM E. BLAIR and Others, Appellants; WILLIAM BLAIR and Others, Respondents.

*Construction of the statute relating to wills — when the intent of the testator is immaterial — signature not at the end of a will.*

The primary rule for the construction of wills, requiring effect to be given if possible to the manifest intention of a testator, cannot be invoked in the construction of the statute relating to their execution. In such cases the courts consider the intention of the Legislature, not that of the testator.

A testator directed the draughtsman who drew his will to write at the bottom of his will the following words:

"I hereby direct my executors to sell at private sale that piece of real estate, with tenements and appurtenances thereto, known as Number —— East One Hundred and Tenth (110) street, in the city of New York, and occupied by Mr. Rosenthal, and the proceeds thereof to be devoted to liquidating any deficiency that may arise in interest or cash bequests made in this will."

Thereupon, in the presence of both attesting witnesses, the testator signed his name and affixed his seal first immediately after the testimonial clause and second at the end of the provision conferring the power of sale upon his executors, and then declared the testament to be his last will and testament, and

requested the witnesses to sign as subscribing witnesses, without in any way limiting his assertion as to the provisions preceding his first signature, and the attesting witnesses signed above the clause granting the power of sale.

*Held*, that a decision that the second or last signature was at the end of the will would not permit the will to be admitted to probate, as in that view of the case the subscribing witnesses would not have signed at the end of the will;

That the first signature was not at the end of the will, within the meaning of the statute, and that such conclusion could not be overborne by the testimony of the draughtsman that the testator stated to him before such provision was written, and before the will was executed, " It has nothing to do with the will, but I want you to add this, so that my executors shall have money enough to pay for funeral expenses and other things that may come up, and it wont interfere with the body of the will."

APPEAL by the contestants, William E. Blair and others, from a decree of the Surrogate's Court of the county of New York, entered in the New York County Surrogate's Court on the 19th day of November, 1894, admitting to probate a certain instrument as and for the last will and testament of Lewis R. Blair, deceased.

*A. B. Porter*, for the appellants.

*James O'Neil*, for the respondents.

PARKER, J. :

The surrogate decided that there was such a subscription and signing by the testator and witnesses at the end of the will of Lewis R. Blair as is required by statute, and admitted it to probate. The object of the statute is to surround testamentary dispositions with such safeguards as will protect them from alteration, and to prevent fraud. The Court of Appeals said of it, in *Sisters of Charity* v. *Kelly* (67 N. Y. 409), that the provision " is a wholesome one, and was adopted to remedy real or threatened evils. It should not be frittered away by exceptions. While its provisions should not be carried beyond the policy of the framers of it, that policy should not be defeated by judicial construction."

Other cases in which the question has been in some form presented are *Matter of Hewitt* (91 N. Y. 261); *Matter of O'Neil* (91 id. 516); *Matter of Conway* (124 id. 455); *Matter of Case* (1 N. Y. St. Repr. 152).

Neither in those cases nor in any others to which our attention

has been called, has the precise question now presented been considered, but they all manifest an intention no the part of the courts to insist that the requirements of the statute shall be strictly enforced.

On the 8th day of December, 1887, Henry G. Leask, at the request of Blair, drafted for him a will containing some nineteen provisions. He was assisted in that work mainly by a prior will executed by Blair. While he was engaged in the work of preparing the new will for execution Blair was in an adjoining room, visiting with the draughtsman's father, who was an old friend of his. As soon as the writing, including the attestation clause, was completed, the draughtsman invited Blair in and read the will to him, saying, as the reading was finished, "Is that your will?" To which Blair replied, "Yes, that is my will." Then Blair said, "Now, I want you to add something at the bottom of that. It has nothing to do with the will, but I want you to add this, so that my executors shall have money enough to pay for funeral expenses and other things that may come up, and it won't interfere with the body of the will."

In accordance with his request the draughtsman added the following : "I hereby direct my executors to sell at private sale that piece of real estate, with tenements and appurtenances thereto, known as Number —— East One Hundred and Tenth (110) street, in the city of New York, and occupied by Mr. Rosenthal, and the proceeds thereof. to be devoted to liquidating any deficiency that may arise in interest or cash bequests made in this will."

Another person was then brought in to subscribe the will as a witness, and in the presence of the subscribing" witnesses Blair signed the writing in two places, at the same time affixing seals, *first*, immediately after the testimonium clause, and, *second*, at the end of the clause which we have just quoted, which immediately follows the signatures of the subscribing witnesses, whose names were written next underneath the attestation clause.

Having done this he declared the instrument to be his last will and testament, and requested the witnesses to sign as subscribing witnesses, which they did underneath the attestation clause and before the provision purporting to confer a power of sale upon the executors.

The learned surrogate decided that Blair's first signature was at the end of the will within the meaning of the statute, and admitted

that which preceded it to probate as the last will and testament of Blair.

A decision that the second and last signature of Blair was at the end of the will would have prevented probate, because the statutory requirement that the subscribing witnesses shall sign at the end of the will would not have been complied with.

Whether the court was right in deciding that the provision which we have quoted, and the signature of Blair subscribed thereto, should be ignored must be considered. The first inquiry naturally relates to the character of this provision. Is it substantial? Had the testator a definite and well-understood purpose when he instructed the draughtsman to write it out? And was that purpose to prevent a failure of the will, as to interest and cash bequests, by providing for a sale of enough real estate to prevent it? If the clause be read and considered independently of the testimony of the draughtsman, an affirmative answer only is possible. And it is a fact not to be lost sight of, that the latter clause was signed and sealed by the testator at the same time and in the same way as the provisions which preceded the attestation clause.

It is urged that, notwithstanding such fact, and the further one that it purports upon its face to constitute an important part of the will, it may be disregarded and the will held to have ended above the first signature, because of the testimony of the draughtsman that Blair in effect declared, when directing that the clause be written, that it had nothing to do with the will. It is clear that it was intended by Blair, by means of this provision, to make certain the payment of the various bequests given by his will.

And it seems to be equally clear that the idea which Blair intended to convey to his draughtsman was, that the added clause would not in any way affect the disposition of his property, which he was undertaking to make by the provisions already incorporated into the instrument.

But, if it be assumed that the language employed by him in giving instructions to his draughtsman is capable of the construction which the learned surrogate has put upon it, then the question is whether a testator's conversation with his draughtsman can have the effect to contradict and overcome a writing made and signed by him a few minutes later?

For the power of sale clause, supported by the signature and seal of the testator, effectually asserts that it constitutes a part of a testator's scheme for working out such a distribution of his property as he had planned. And if its assertion can be set at naught by the testimony of the draughtsman alleging a contrary intention on the part of the testator, then there would seem to be opened a door for fraud, which it was the aim of the Legislature to close. It is true that there is no suspicion of fraud in this case, and to sustain the probate of the will would work out the intention of Blair, unless it should happen that there should not be moneys enough to pay the bequests by reason of the failure of the power of sale as to the One Hundred and Tenth street property.

In saying this, we do not lose sight of the facts that the primary rule of the construction of wills requiring effect to be given, if possible, to the manifest intention of the testator, cannot be invoked in the construction of the statute relating to their execution. In such cases the courts consider the intention of the Legislature, not that of the testator. (*Matter of O'Neil*, 91 N. Y. 516.)

But the fact that no harm will be likely to result in this case from a probate of that part of the will which precedes the first signature of Blair should not have much weight with the court, for the more important question after all is, whether the decision will establish a good or bad precedent. Bearing in mind that Blair directed the writing of the provision following the attestation clause; that in the presence of both attesting witnesses he signed his name and affixed his seal, *first*, after the testimonium clause and, *second*, after the provision conferrring a power of sale upon his executors, and directing " the proceeds thereof to be devoted to liquidating any deficiency that may arise in the interest or cash bequests made in this will; " and that he then declared it to be his last will, without in any way limiting his assertion to the provisions preceding his first signature, the conclusion must necessarily be reached that the first signature was not at the end of the will. And such conclusion cannot be overborne by the testimony of the draughtsman that Blair said to him before it was written, and necessarily before execution, that such provision " has nothing to do with the will." But it should be further said that the witness' testimony as a whole does not convey

to our minds the impression that Blair did not intend it to be a part of his will, but instead that he intended to give to his draughtsman the assurance merely that the addition of the clause would not affect the disposition of his property as provided in the instrument then written.

The draughtsman quotes Blair in saying : "It has nothing to do with the will, but I want you to add this so that my executors shall have money enough to pay for funeral expenses and other things that may come up, *and it wont interfere with the body of the will.*"

We think it must be held that the first signature of Blair was not at the end of the will, and it follows that the decree, admitting so much of the instrument to probate as precedes it, is in violation of the statute requiring the signing by the testator at the end of the will.

The decree should be reversed and probate denied, with costs to all parties, payable out of the estate.

VAN BRUNT, P. J., and FOLLETT, J., concurred.

Decree reversed and probate denied, with costs to all parties, payable out of the estate.