In the Matter of the Probate of the Last Will and Testament of ISABELLA ANDREWS, Deceased.

JOHN R. KNOX, Executor, Appellant; JOHNSTON ANDREWS et al., Respondents.

1. STATUTE OF WILLS — INTENTION OF LEGISLATURE GOVERNS CONSTRUCTION. The intention of the legislature, and not that of the testator, must govern the construction of the Statute of Wills (2 R. S. 63, § 40), and, if he fails to execute a will in conformity thereto, the court must condemn the instrument and can give no force to the fact that he honestly intended thereby to make a will.

2. WILL — WHEN NOT SUBSCRIBED AT THE END. A will, drawn upon a printed blank folded in the middle so as to make four consecutive pages, with the attestation clause at the top of the second page and executed at that point by the testator and the attesting witnesses, so that the first two pages together make a complete will, is not subscribed by the testator "at the end of the will," as required by statute, where the third page contains further material and complete dispositions of property in no manner connected with the first or second pages except that the third page is numbered "2nd page" and the second page "3rd page" — the draftsman having passed to the third page after he had filled the first.

3. DOCTRINE OF INCORPORATION LIMITED. The doctrine of incorporation cannot be successfully invoked to read into such a will the alleged second page, as the result would be to permit an evasion of the statute.

*Matter of Andrews*, 43 App. Div. 394, affirmed.

(Argued January 8, 1900; decided February 27, 1900.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered

1

October 6, 1899, affirming a decree of the Surrogate's Court of the county of Kings refusing to admit to probate the will of Isabella Andrews, deceased.

The facts, so far as material, are stated in the opinion.

*George G. Reynolds* for appellant. The testatrix and witnesses signed at the end of the will within the meaning of the statute. (*Sisters of Charity* v. *Kelly*, 67 N. Y. 415; Schouler on Wills, § 284; *Matter of Eagan*, N. Y. L. J., Jan. 19, 1893; *Tonnele* v. *Hall*, 4 N. Y. 144; *Hitchcock* v. *Thompson*, 6 Hun, 279; *Matter of Dayger*, 47 Hun, 127; *Matter of Singer*, 19 Misc. Rep. 679; *Matter of Stokes*, 31 L. T. Rep. 552; *Matter of Coombs*, L. R. [1 P. & D.] 302; *Matter of Kimpton*, 3 S. & T. 427.) Even if the " second page " is not, strictly speaking and on the face of it, a part of the body of the will which is ended and signed on the " third page," it is then to be considered testamentary matter, which, by its paging and its being joined to the will as it was while in the possession of testatrix, and when executed by her, is identified and demonstrated so far as to be deemed incorporated into it. (*Matter of Almosnino*, 1 S. & T. 508; *Matter of Watkins*, L. R. [1 P. & D.] 19; *Matter of Pascall*, L. R. [1 P. & D.] 606; *Van Straubenze* v. *Monck*, 3 S. & T. 12; *Tonnele* v. *Hall*, 4 N. Y. 144; *Brown* v. *Clark*, 77 N. Y. 369; *Caulfield* v. *Sullivan*, 85 N. Y. 155.)

*Armour C. Anderson*, special guardian, for infant legatees. While the statute requires the will to be signed at the end thereof, these words should be taken in their ordinary and popular signification; in other words, at the place where the testator intended to stop, not on the last or back page of the paper. (*Sisters of Charity* v. *Kelly*, 67 N. Y. 409; *People ex rel.* v. *Roosevelt*, 14 Misc. Rep. 536; *Tompkins* v. *Hunter*, 149 N. Y. 117; *Matter of Laudy*, 78 Hun, 479; *Younger* v. *Duffie*, 94 N. Y. 535; *Matter of Blair*, 84 Hun, 581; *Matter of Whitney*, 153 N. Y. 259; *Herter* v. *Mullen*, 159 N. Y. 40; *Matter of Dayger*, 47 Hun, 127; *Matter of Singer*,

19 Misc. Rep. 679.) Admitting that the statutory provision controls the manner of subscribing a will, the will in this instance was properly executed. It is signed at the end thereof. (*Gilbert* v. *Knox*, 52 N. Y. 125 ; *Younger* v. *Duffie*, 94 N. Y. 539 ; *Matter of Braddock*, L. R. [1 P. & D.] 433 ; *Rees* v. *Rees*, L. R. [3 P. & D.] 84.)

*Frederic W. Adee* for respondents. The paper propounded for probate is not subscribed or attested in the manner required by the Statute of Wills of the state of New York (2 R. S. 63, § 40). The refusal of the surrogate to admit the instrument offered to probate was correct. (*Willis* v. *Lowe*, 5 Notes of Cases, 428 ; *Matter of Parslow*, 5 Notes of Cases, 112 ; *Matter of Tookey*, 5 Notes of Cases, 386 ; *Ayres* v. *Ayres*, 5 Notes of Cases, 375 ; *Sweetland* v. *Sweetland*, 4 S. & T. 6 ; *Smee* v. *Bryer*, 6 Moore P. C. 404 ; *Matter of Powell*, 4 S. & T. 34 ; *Matter of Wright*, 4 S. & T. 35 ; *Matter of Coombs*, L. R. [1 P. & D.] 302 [1866] ; *Matter of Wray*, 31 Wkly. Rep. 476.) Strict adherence to the provisions of the Statute of Wills prescribing the manner of their execution has always been required by the courts of this State. (*Dennett* v. *Taylor*, 5 Redf. 561 ; *McCord* v. *Lounsbury*, 5 Dem. 68 ; *Sisters of Charity* v. *Kelly*, 67 N. Y. 409 ; *Matter of O'Neil*, 91 N. Y. 516 ; *Matter of Conway*, 124 N. Y. 455.) No evidence upon probate can remove the fatal defects in subscription and attestation contained in the propounded instrument. (*Matter of Hewitt*, 91 N. Y. 261.) The doctrine of incorporation, ineffectually evoked on behalf of the proponent in both of the lower courts, has no bearing upon the case on appeal. (*Matter of O'Neil*, 91 N. Y. 516 ; *Matter of Conway*, 124 N. Y. 455 ; *Booth* v. *Baptist Church*, 126 N. Y. 215 ; *Matter of Whitney*, 153 N. Y. 259 ; *Dennett* v. *Taylor*, 5 Redf. 561 ; *Tonnele* v. *Hall*, 4 N. Y. 140.) The question presented is not an open one in this court. The statute has always been strictly construed, and the will must be a completed whole, signed by the testator and witnesses at the end thereof. (*Matter of Conway*, 124 N. Y. 455 ; *Mat-*

ter of *Blair*, 152 N. Y. 645; *Matter of Whitney*, 153 N. Y. 259; *Matter of Hewitt*, 41 N. Y. 261; *Matter of O'Neil*, 91 N. Y. 516.)

BARTLETT, J. This case comes before us under circumstances so unusual that a few words of comment may not be out of place.

The surrogate of Kings county refused probate to the will we are about to consider, on the ground that it was not subscribed at the end thereof, as required by the Statute of Wills. (2 R. S. 63, § 40; 2 Banks' 9th Edition, p. 1877.) In so doing, he followed the settled law of this court for years, and many well-reasoned English cases, when construing a statute similar to our own. (1 Vict. ch. 26.)

The learned Appellate Division affirmed the surrogate's decree with a divided court, giving utterance at the same time to a protest both emphatic and unanimous.

The opinion states that the conclusion reached was solely under the stress of authority, and that, unaided by the light of judicial decisions, a contrary result would have followed. One of the dissenting justices stated that while he recognized the principle of *stare decisis*, cases sometimes arise when a judge is justified in refusing to follow a decision of the court of last resort. The other dissenting justice wrote an opinion in which he succeeded in reaching the conclusion that neither the Statute of Wills, nor the cases which had compelled the majority of his brethren to reluctantly affirm the surrogate's decree, called for any such result.

As the opinion of the Appellate Division concedes that the question presented is not an open one in this court, we might well content ourselves with an affirmance of the judgment did we not feel constrained by judicial courtesy to re-examine the legal situation that has been so pointedly called to our attention.

It has long been the settled policy of this state to require certain formalities to be observed in the execution of wills; these provisions are exceedingly simple, and calculated to pre-

vent frauds and uncertainty in the testamentary dispositions of property. (*Matter of O'Neil*, 91 N. Y. 520; *Willis* v. *Lowe*, 5 Notes of Cases, 428.) ·

Section 40 (2 R. S. 63; 2 Banks' 9th Ed. p. 1877) reads as follows: "Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner: 1. It shall be subscribed · by the testator at the end of the will: 2. Such subscription shall be made by the testator, in the presence of each of the attesting witnesses, or shall be acknowledged by him, to have been so made, to each of the attesting witnesses: 3. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed, to be his last will and testament. 4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator."

These are the only restrictions imposed upon a testator when executing his will and they appear to be wise, reasonable and easily understood.

It has been repeatedly laid down as the rule in this state, in cases we shall presently discuss, that the intention of the testator is not to be considered when construing this statute, but that of the legislature. The question is not what did the testator intend to do, but what has he done in the light of the statute.

It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements.

It is better this should happen under a proper construction of the statute than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills.

It may be well, before examining the will which is the subject of this appeal, to refer to a few of the cases which construe the provision of the statute requiring the testator and the witnesses to subscribe at the end of the will.

In *Sisters of Charity* v. *Kelly* (67 N. Y. 409) it was held that the provision of the statute requiring the testator to subscribe " at the end of the will" means the end of the instrument as a completed whole, and where the name is written in the body of the instrument, with any material portion following the signature, it is not properly subscribed, nor can it be claimed that the portion preceding the signature is valid as a will.

In *Matter of O'Neil* (91 N. Y. 516) a printed blank was used and the formal commencement was printed on the first page and the formal termination printed at the foot of the third page. The entire blank space was filled with writing and apparently for want of room a portion of a paragraph containing material provisions was carried over to and the paragraph finished at the top of the fourth page; the two portions were not, however, sought to be connected by means of a reference or anything indicating their relation to each other. The name of the testator was written at the end of the printed form and the names of the witnesses written below the formal attestation clause on the third page. This court held that there was no legal subscription of the will and affirmed the judgment denying probate.

Chief Judge RUGER, who wrote the opinion of the court, said : " While the primary rule governing the interpretation of wills, when admitted to probate, recognizes and endeavors to carry out the intention of the testator, that rule cannot be invoked in the construction of the statute regulating their execution. In the latter case courts do not consider the intention of the testator, but that of the legislature. * * * The statute fixes an inflexible rule, by which to determine the proper execution of all testamentary instruments. * * *

" It will be seen in all of the cases cited there was no reason to doubt the testator's intention to make a valid disposition of his property, and yet in each case the will was denied probate, because in the execution thereof the testator did not conform to the provisions of the statute, in failing to place his signature at the physical end of the will."

In *Matter of Conway* (124 N. Y. 455) a blank form was used, the whole of which was upon one side of the paper. A space was left for the dispositions to be made, preceded by the words "I give, devise and bequeath my property as follows." The blank space was filled up by three complete devises; at the end of the last was underlined, in parenthesis, the words "carried to back of will." Upon the back of the sheet was written the word "continued;" following it were various bequests and then the words "signature on face of the will." The signature of the testator appeared at the end of the testimonium clause on the face of the paper and those of the witnesses under the attestation clause. It was held by the Second Division of this court that there was not such a subscription and signing by the testator as required by the statute, and that the will had been improperly admitted to probate.

Judge PARKER, in delivering the opinion of the court, said: "The aim of the statute is to prevent fraud; to surround testamentary dispositions with such safeguards as will protect them from alteration."

The learned judge also declared in substance that the admitted intention of the testator that the provisions appearing on the page following his signature should form a part of his will, would in no way affect the question before the court.

In *Matter of Whitney* (153 N. Y. 259) it was held that a will drawn upon a printed blank covering only one page, and signed by the testator and subscribing witnesses at the foot of the page, is not subscribed by the testator at the end of the will, as required by the statute, when the blank space in the printed form is filled up by subdivisions marked, respectively, "First" and "Second," followed by the words "See annexed sheet," and additional subdivisions marked, respectively, "Third" and "Fourth," are written on a separate piece of paper attached to the face of the blank, immediately over the first and second subdivisions, by removable metal staples. It was held that the question presented was not an open one in this court, and that the will was not legally subscribed.

The court again approved the doctrine that the existence of

good faith did not affect the question pending, as the intention of the legislature, and not that of the testator, governed.

In *Matter of Blair*, reported in 84 Hun, 581, this court affirmed the judgment of the General Term, first department, on the opinion below, which reversed a decree of the Surrogate's Court admitting the will to probate. This instrument consisted of eight pages. The testator signed at the bottom of the seventh page, and the witnesses signed at the end of a proper witnessing clause at the top of the eighth page. After the place for the signatures of the witnesses, but before they were actually signed or the will executed, a clause was added directing the executor to sell at private sale a certain piece of real estate, and to devote the proceeds of sale to liquidating any deficiency in interest or cash bequests under the will. The will was then executed, as before stated, and the testator signed the added clause, but the witnesses did not. (152 N. Y. 645.)

In each of the cases cited, it was very clear that the will was not legally subscribed, and that to have admitted it to probate, by yielding to the suggestion that it was an honest attempt to make a will, would have been a practical repeal of the statute as to subscription at the end of the instrument.

Our present Statute of Wills, requiring that a will should be subscribed at the end thereof, is similar to 1 Victoria, ch. 26, which was in force in England from 1837 until 1853, when it was amended by 15 and 16 Victoria, ch. 24, known as "Lord St. Leonard's Act." Prior to this amendment, the English courts construed the act as strictly as our own have the present Statute of Wills. (*Willis* v. *Lowe*, 5 Notes of Cases, 428; *Re Parslow*, Id. 112; *Re Tookey*, Id. 386; *Ayres* v. *Ayres*, Id. 375; *Sweetland* v. *Sweetland*, 4 Swabey & Tristram, 6; *Smee* v. *Bryer*, 6 Moore's P. C. Cases, 404.) In the latter case, Lord LANGDALE, delivering the opinion of the court, said at page 410: "It may happen, even frequently, that genuine wills, namely, wills truly expressing the intentions of the testators, are made without observation of the required forms, and whenever that happens, the genuine

intention is frustrated by the act of the legislature, of which the general object is to give effect to the intention. The courts must consider that the legislature, having regard to all probable circumstances, has thought it best, and has, therefore, determined to run the risk of frustrating the intentions sometimes, in preference to the risk of giving effect to, or facilitating, the formation of spurious wills, by the absence of forms. It is supposed, and that authoritatively, that the evil of defeating the intention in some cases, by requiring forms, is less than the evil probably to arise by giving validity to wills made without any form in all cases."

The reasoning of our own and the English courts finds support in two states where the Statute of Wills is substantially the same as in New York. (*Hays* v. *Harden*, 6 Penn. St. 409; *Glancy* v. *Glancy*, 17 Ohio St. 134.)

We come, then, in view of the law as it now stands, to the will before us.

The testatrix was an unmarried woman, aged about sixty years; she left her surviving no nearer relatives than first and second cousins; no part of her estate is given to any relative; a stranger to her blood is sole executor; the will is in his handwriting, and the proceeds of sale of testatrix's house and lot in Brooklyn are given one-half to him and one-half divided equally between two religious societies. In addition to this the testatrix gave eight money bequests, four to religious societies and a cemetery and the others to persons not of her blood. These bequests aggregate about $4,200.00.

The residuary clause is as follows: "The rest, residue and remainder of my estate I give unto my executor, to make disposition of and divide in such manner as he in his judgment may deem best and proper."

No undue influence is charged.

The estate is estimated at about fifteen thousand dollars. The will was drawn on a printed blank, being one piece of paper, consisting of a sheet of four pages, the two leaves of which were joined from top to bottom on the left side.

The formal opening part of the will is printed on the top

of the first page, leaving the rest of that page blank; the closing part, containing the clause for the appointment of the executor, and that which follows, including the attestation clause, was printed on the top of the second page of the first leaf, leaving the rest of that page and both pages of the second leaf blank. The draftsman filled the blank on the first page and then turned to the first page of the second leaf, being the third page of the blank, and filled that, marking it at the top "2nd page." He then turned to the second page of the first leaf, containing the closing part of the will as before stated, in print, marked it at the top "3rd page" and completed the instrument, save as to its execution, by filling the blanks at the top of that page, except the blank for the date, which was left to be filled in at the time of execution.

It is to be observed that a complete will was made out on the two sides of the first leaf, being the first and second pages of the blank; all of the first side of the third leaf, marked "2nd page" could have been written after execution, as no sentence thereof is continued from the first page of the will, nor carried over to the alleged third page thereof. The fourth page of the blank could have been written over in the same way.

The first page of the will contains the money legacies, the direction to sell the real estate and divide the proceeds and two legacies of personal property.

The alleged second page of the will contains bequests of personal property and the residuary clause.

We have here on one entire piece of paper, folded so as to make four pages, a complete will so far as form goes, on the first and second pages, and then follows on the third page of the blank and after the signatures of testatrix and witnesses on the second page of the blank a page marked "2nd page," not connected with the will proper in any way, but complete by itself.

The question is not whether from the proofs in this case the page following the signatures of the will is in fact a part of testatrix's will by reason of her established intention, but is

the instrument so drawn, subscribed at the end thereof as the statute commands.

We are of opinion that it is not legally subscribed, and that to hold otherwise would open the door to gross fraud and be contrary to the statute and the settled law.

It was suggested on the argument of this case that the effect of the Statute of Wills, as strictly construed by this court, is to defeat the intention of many testators, while the fraudulent addition to wills was a crime of rare occurrence.

The fallacy of this argument consists in overlooking the fact that the number of frauds prevented by our wise and simple statute can never be known.

We might as well ask how many commercial crimes have been prevented by the Statute of Frauds.

The case at bar is one of the strongest illustrations of the wisdom of the Statute of Wills that has ever come to the attention of this court.

With a complete will on the first and second pages of a blank containing four pages, there is nothing to prevent filling up the vacant third and fourth pages with any number of additional provisions, including, as in this case, a residuary clause allowing an executor to dispose of the residue in such manner as he deemed proper.

The defeat of testamentary intention in a few cases is not due to the statute, or the construction of it by the courts, but to the fact that scriveners and other laymen, ignorant of the simple and clear provisions of the statute, are permitted to draw wills.

It is urged with much ability, by the learned senior counsel for the appellants, that the alleged second page of this will can be read into it by invoking the doctrine of incorporation as established in England and, to some extent, in this state.

We are of opinion that, under the facts here disclosed, that doctrine has no application; if it were otherwise, the evasion of the statute would be so easily accomplished as to render its repeal unnecessary.

We have to say in conclusion that it is quite possible we

have given to this appeal undue importance, involving, as it does, a question of law settled in this court, but we desire to express in the most emphatic manner our approval of the Statute of Wills as now construed.

The order appealed from should be affirmed, with costs to respondent and special guardian to be paid out of the estate.

Parker, Ch. J., Gray, O'Brien, Haight, Martin and Vann, JJ., concur.

Order affirmed.