(42 Misc. Rep. 79.)

BLAIR v. BLAIR et al.

(Supreme Court, Special Term, New York County. December, 1903.)

1. DESCENT AND DISTRIBUTION—CONTEST OF WILL—EXPENSES—CONTRIBUTION.
     Plaintiff, named in a will as executor, and after the rejection of the will appointed administrator, paid counsel, out of his own funds, a reasonable sum on an attempt to prove the will. He had not been repaid the sum out of the estate because of certain adverse decisions not involving the merits. *Held* that, after full distribution of the estate by him as administrator, he could maintain an action against persons entitled to a share in the estate for contribution.

2. SAME—LIEN ON ASSETS.
     Where a person appointed executor fails in an attempt to prove the will, and afterwards acts as administrator, and fails in a proceeding in the Surrogate's Court to procure reimbursement out of the estate for attorney's fees paid by him in attempting to establish the will on the ground that the surrogate had no jurisdiction, he is entitled, after bonds of the estate had been distributed to the parties entitled by him as administrator, to a lien on such bonds or their proceeds, to secure to him contribution for expenses so incurred.

Action by William Blair against Lewis R. Blair and others to compel defendants to contribute to reimburse for moneys paid counsel in an attempt to prove the will of Wesley S. Blair, deceased. Judgment for plaintiff.

James O'Neil, for plaintiff.

Porter & Kilvert, for defendants Charles H. Blair, William E. Blair, Kirby Lewis, and Betsey A. Blair, as administrators, etc.

Paul Armitage, for Lewis R. Blair.

DAVIS, J. The plaintiff, having been named as executor, presented for probate in 1894 to the surrogate of the county of New York an instrument purporting to be the last will and testament of Lewis R. Blair, deceased. On November 20, 1894, this instrument was admitted to probate, and letters testamentary issued thereon to the plaintiff. The defendants William E. Blair, Charles H. Blair, and Wesley S. Blair, now deceased (his administrator being made a party defendant to this action), having contested the probate before the surrogate, appealed from the decree admitting the will to probate, and in February, 1895, the General Term reversed said decree, and denied the probate. Matter of Blair, 84 Hun, 581, 32 N. Y. Supp. 845. The Court of Appeals, on appeal thereto by the plaintiff, in March, 1897 (46 N. E. 1145), affirmed the order of the General Term reversing the decree, and on April 8, 1897, the Surrogate's Court revoked the probate of the will and the letters testamentary of the plaintiff. In February, 1898, the plaintiff presented his accounts as executor for adjustment. The plaintiff had retained as his counsel Mr. O'Neil, who acted for him in the probate proceedings and in the appeals referred to above from the 1st of January, 1894, until the revocation of letters testamentary in April, 1897. Mr. O'Neil's bill for legal services was $7,000, and in his account as executor the plaintiff asked credit for this amount. For the purpose of discharging this obligation, the plaintiff, down to May 7, 1895, had paid his counsel $2,150 out of the funds of the estate, and in May, 1898, in payment of the balance of $4,850, he gave to his counsel his promissory note for $4,850, indorsed by his wife, and payable three months after date. Upon the accounting the surrogate found that the services rendered by counsel were of the value of $4,850, instead of $7,000, and allowed the $2,150 paid prior to May 7, 1895, and the note to the amount of $2,700, as valid payments by said plaintiff. On appeal by the contestants the Appellate Division modified the decree of the Surrogate's Court by disallowing the $2,700 represented by the note, upon the ground that the note was not a payment, and affirmed the decree as modified. Matter of Blair, 49 App. Div. 417, 63 N. Y. Supp. 678. On October 25, 1897, letters of administration upon the estate of Lewis R. Blair, deceased, were issued by the surrogate to the plaintiff and to the defendant William E. Blair, and thereafter, pursuant to an order of the surrogate, the plaintiff, as such executor, turned over to the administrators all the property and effects in his hands and under his control as executor, and was duly discharged as such executor, and at no time since has the plaintiff, as such execu-

tor, been in possession or control of any property belonging to the
estate. On April 18, 1900, the plaintiff paid his counsel, Mr. O'Neil,
from his personal funds, $2,700 in cash, in full payment and satis-
faction of the balance due for services rendered; thus making the
amount paid for this purpose $4,850. In October, 1900, the plaintiff
filed a separate account as administrator, as aforesaid, in which he
claimed reimbursement from the estate for the $2,700 paid in cash to
his counsel. The surrogate, upon said accounting, held that the plain-
tiff was not entitled to be reimbursed from the estate funds for this
$2,700, and a decree was entered accordingly April 18, 1901, upon said
accounting, finally judicially settling the administrator's account, and
directing the distribution of the remaining undistributed estate to the
persons entitled thereto. On appeal from the surrogate's decree the
Appellate Division affirmed this decree upon the ground that the
plaintiff, as executor, was not entitled to be credited with this item
upon his accounting as administrator, but this affirmance was without
prejudice to the right of the executor to move for leave to open his
account as executor, and to file a supplemental account embracing
the item, which leave was granted. Matter of Blair, 67 App. Div.
116, 73 N. Y. Supp. 675. In anticipation of this latter appeal, and
on April 20, 1901, an agreement was entered into between the par-
ties to this action, who are the persons entitled to and interested
as distributees in said estate, which recited the making of said decree
of April 18, 1901, and the fact that the plaintiff herein intended to
appeal to the Appellate Division from so much thereof as refused
him reimbursement for the $2,700 from the funds of the estate, and
provided that the estate should be fully distributed under and pur-
suant to said decree, with the agreement that the parties thereto
should, on such distribution and execution of this agreement, each
deposit in the Mercantile Safe Deposit Company, subject to the joint
control of the respective parties to said agreement, Scottish Rite
bonds of the par value of $100 each, making in all 30 of said bonds,
and that upon the entry of a judgment on said appeal or at any time
theretofore the said bonds may be converted into cash at their market
or best value, and the said judgment satisfied out of said cash in ac-
cordance with the directions of said judgment, and in case of affirm-
ance out of the interest of William Blair (the plaintiff herein) in said
deposit, and in case of reversal pro rata out of the interest in said
deposit of the parties of the second part thereto (the defendants in
this action), and the balance thereof paid over to the representative
parties thereto, or their order, pro rata with their said deposit of said
bonds, and, if such a cash conversion be not so made, then such dis-
tribution shall be from said bonds. It also provided that if an appeal
be taken by either party to the Court of Appeals from the determina-
tion of the appeal to the Appellate Division, the provisions of the
agreement should apply to and await the final decision of such appeal
to the Court of Appeals, providing such appeal is duly perfected with-
in 60 days after the entry of the order determining the appeal of
the Appellate Division, and that full performance of the covenants
and obligations of said agreement shall effect and constitute the full
and complete release and discharge of all claims existing between

the parties thereto as between themselves on account of all matters and things involved therein.

On April 23, 1901, the said estate was completely distributed to the persons entitled thereto. Receipts were given, together with a full release and discharge, to the administrators of all claims against them and the estate. On April 24, 1901, the bonds were deposited in the vault of the safe deposit company, according to the terms of the agreement mentioned. No appeal was taken to the Court of Appeals from the order of the Appellate Division above mentioned, and the time in which to do so has expired. On or about March 13, 1902, pursuant to permission granted by the Surrogate's Court in accordance with the opinion in 67 App. Div. 116, 73 N. Y. Supp. 675, the plaintiff filed a supplementary account, but a decree was made disallowing and disapproving this account, and denying the application of the plaintiff to be reimbursed in the sum of $2,700 from the funds deposited in the Mercantile Safe Deposit Company by the parties hereto April 24, 1901, because of want of jurisdiction of the court over such fund. The opinion of the learned surrogate is reported in the New York Law Journal, November 6, 1902. He says:

"On the conceded facts the estate has been fully administered and distributed, and no fund now exists which is subject to the orders or decrees of this court. I am entirely without power to afford any relief to the discharged executor, and it would be improper for me to express an opinion in the form of a decree as to the merits of his claim. I can only dismiss the present proceeding, leaving him to take such remedy in another forum as he may be advised."

And so the plaintiff brings this action to compel the defendants to contribute each one-fifth of $2,700 to reimburse him, and asks that he be declared to have a lien upon the money deposited in the safe deposit company, and that defendants be directed to pay therefrom the amount of the judgment. The reasonableness and propriety of the plaintiff's claim of $2,700 have been determined by the Surrogate's Court, and that determination has never been disturbed by the Appellate Court. Moreover, the independent evidence adduced on the trial satisfies me that the claim is reasonable and proper. In the supplementary accounting which followed the decision of the Appellate Division (67 App. Div. 116, 73 N. Y. Supp. 675) all the parties to this action were before the court. They stipulated and agreed upon such proceeding, among other things, as follows:

"Seventh. That on the 18th day of April, 1900, William Blair paid to James O'Neil, as his attorney, in cash the sum of $2,700, in full payment and satisfaction of the balance due for services rendered by him as hereinbefore set forth, such payment being from his individual funds and not from funds of said estate."

It was found by the referee in this same proceeding, among other things, as conclusions of law:

"That the supplementary account filed is, in effect, an application made by William Blair to obtain a reimbursement from the property of the estate of Lewis R. Blair for the sum of $2,700, paid by him to his attorney from his individual funds and for services rendered in the matter of the probate of the will of the said Lewis R. Blair, deceased, and so paid by him from his individual funds at a time subsequent to the revocation of his letters testa-

mentary. That the amount of the claim as made by the said William Blair is a reasonable and proper one for the legal services rendered to him by his said attorneys. That there are no' estate funds in the hands of any person, either individually or as personal representatives of the estate of Lewis R. Blair, deceased, to pay any claim existing against the said estate."

By a decree of the Surrogate's Court dated November 11, 1902, the foregoing portions of the referee's report were confirmed. It thus seems to me to have been sufficiently adjudicated that the Blair estate is indebted to the plaintiff for the amount of $2,700, expended for services of his counsel as aforesaid, for which the defendants are liable proportionately. Nor do I think that the agreement of April 20, 1901, under which the estate was distributed, entitles the defendants to a judgment here. The fund set apart under that agreement was deposited to abide the event of an appeal from a decree of the surrogate, which prevented the executor from having his disbursements for legal services as executor allowed on his accounting as administrator. It is true the decree was affirmed on appeal, but with the statement that it was without prejudice to the right of the executor to apply for leave to file a supplementary account. Thus the question of the executor's right to be reimbursed was left open by the Appellate Court, and the opinion of the surrogate that there had been "a final determination of all questions as to permissible allowances" to the executor disapproved. It was, in effect, a reversal of the surrogate upon the question of the right of the executor to be reimbursed from some source. Had there been any funds of the estate in the executor's hands at the time of his supplemental account, doubtless his claim would have been allowed if he had shown that he had actually disbursed the money. Under the circumstances, I think that the "event of the appeal," as contemplated by both parties to the agreement, has not occurred. The affirmance contemplated by the agreement was such as would finally prevent the executor's recovery. The affirmance as made by the Appellate Division expressly recognized the executor's right to file a supplemental account embodying this disbursement. The bonds which were deposited in the Mercantile Safe Deposit Company pursuant to the agreement heretofore mentioned were funds of the estate distributed under such agreement and then redeposited. They or their proceeds are capable of identification as previously funds of the Blair estate. This plaintiff is entitled to a lien upon the bonds deposited, or their proceeds, to the amount of his claim, because to that extent there was an overpayment to the parties interested in the estate, and out of those bonds or their proceeds a court of equity can enforce payment the same as if actually in the possession of the executor as trust property. The plaintiff is therefore entitled to judgment for the payment by each of said defendants of a proportionate share of said $2,700, with interest from April 18, 1900, and that he have a lien upon the said bonds deposited as aforesaid, or their equivalent, the proceeds of their sale, with costs, and an extra allowance of $150.

Judgment accordingly.