.Y. 'Supp. 433. It would therefore appear that the testator intended that the trust fund mentioned in paragraph tenth of the will should be distributed among his grandchildren per stirpes and not per capita.

[4] The executor also asks that the court determine how the transfer tax upon the various remainders after the life estates provided in the will shall be apportioned. The transfer tax upon the value of the respective life estates and the remainders thereafter should be paid out of the particular trust funds set apart for the benefit of the life tenants. Matter of Vanderbilt, 172 N. Y. 69, 64 N. E. 782; Matter of Tracy, 179 N. Y. 501, 72 N. E. 519. As each of the decedent's grandchildren is entitled to an exemption of $5,000, the special guardian for Adelaide Buchanan contends that her share of the fund mentioned in the tenth paragraph of the will should be paid to her free from any transfer tax, and the same contention is made by the attorneys representing the other participants in the said fund. As the statute does not provide that any particular portion of the property passing to a beneficiary shall be exempt, but only that of the entire amount transferred $5,000 shall be exempt, the beneficiaries are not entitled to set apart any particular $5,000 for the exemption. The $5,000 is to be deducted from the value of the entire legacy, and those entitled to participate in the trust fund disposed of in paragraph tenth of the will are entitled only to an exemption on that amount in the proportion which the entire value of the bequests made to them bears to the amount to which they are entitled under that paragraph. The amount of the tax as so ascertained is to be deducted by the executor from the amount paid over to the legatees under paragraph tenth of the will, and the tax upon the remainder of their respective interests in decedent's estate is to be paid out of the respective trust funds in which they are interested as remaindermen.

Submit decree in accordance with this decision, and tax costs on notice.

Decreed accordingly.

---

(81 Misc. Rep. 101.)

### In re REISNER'S WILL.

#### (Surrogate's Court, New York County. May, 1913.)

WILLS (§ 133*)—SUBSCRIPTION—SUFFICIENCY—"END OF THE WILL."

Where a will written by testator himself on an ordinary blank consisting of one sheet of paper folded over to form four pages is signed by the testator and the subscribing witnesses on the first page and by the testator alone on the third page, it is not signed at the "end of the will," as required by Decedent's Estate Law (Consol. Laws 1909, c. 13) § 21 (4), and probate of the instrument must be refused.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 342–344; Dec. Dig. § 133.*

For other definitions, see Words and Phrases, vol. 3, pp. 2387–2388; vol. 8, p. 7649.]

Contested proceeding for probate of the will of Samuel Reisner, deceased. Decreed according to opinion.

---

Jacob Newman, of New York City, for proponent.
Kremer & Leavitt, of New York City, for contestants.

COHALAN, S. The will was written by testator himself on an ordinary will blank consisting of one sheet of paper, folded over at the middle to form four pages, so that, except for the fold at the top, the paper has the appearance of two sheets of legal cap paper fastened together at the top. The testator wrote several bequests in the part of the paper left blank for that purpose, filled in the name and address of the executor appointed, and, not having sufficient room to complete the will on the first page, he continued writing on the second page, which is on the reverse side of the first page. The will is continued on the inside of the paper from the second to the third page, and the writing ends near the top of the third page, where the instrument is signed by the testator. To read from the first to the second page one must turn up the first page, and then turn the paper halfway about or upside down, and to continue the reading from the second page to the third page with the whole paper unfolded it is necessary to again turn the whole paper end for end. The testator signed the paper where he stopped writing on the third page. He also signed on the first page at the place on the will blank where the signature to a will is ordinarily affixed, and he signed his name again at the end of the printed attestation clause on the first page.

The witnesses to the will signed the attestation clause on the first page and also signed their names opposite the other signature of the testator on the first page. It is contended that the will can be read "logically" by beginning at the preliminary printed clause, "In the name of God, Amen, I, Samuel Reisner," etc., then right along through the clauses written by testator himself in the blank spaces of the form, down to the printed words, "I hereby appoint," etc. Proponent would then have us skip to the inside pages and read along to where testator finished his writing and signed his name, which is on the third page. We are asked then to come back again to the first page, to the clause beginning with the printed words, "I hereby appoint," in which Louis M. Brown, No. 787 Eighth avenue, New York City, is appointed executor. With this order of reading, testator's signature and the signatures of the two witnesses would come next, and then would follow the printed attestation clause and the other signatures of testator and the two subscribing witnesses at the bottom of the first page.

Section 21, subd. 4, Decedent Estate Law (Consol. Laws 1909, c. 13), provides:

"There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator."

Proponent's counsel contends that the end of the will is found on the first page by reading the will in the manner described above, and Matter of Field, 204 N. Y. 448, 97 N. E. 881, 39 L. R. A. (N. S.) 1060, is urged as controlling authority for such an interpretation of the words "end of the will."

The facts of the Field Case are entirely different from the facts of the case before me; and, although the Court of Appeals laid down a

more liberal rule than the one that had prevailed up to that time on the question of what is the "end" of a will, there is no way that I can see by which even the language of the opinion can be applied to the present case. As the two witnesses did not sign their names at the end of this will, probate must be refused. Matter of Hewitt, 91 N. Y. 261; Matter of Blair, 84 Hun, 581, 32 N. Y. Supp. 845; affirmed 152 N. Y. 645, 46 N. Y. Supp. 1145.

The executor named in the paper propounded as a will may tax his costs and the same will be allowed.

Decreed accordingly.

(81 Misc. Rep. 73)

### BROADWAY BLDG. CO. v. SALADINO.

(City Court of New York, Trial Term. May, 1913.)

1. NEW TRIAL (§ 140*)—PROCEEDINGS TO PROCURE—IMPEACHMENT OF VERDICT.
   An affidavit of plaintiff's attorney embodying a statement of what took place in the jury room, when based on a juror's statement that the verdict was wrong, and that he consented to same merely because he feared the jury would be locked up over night, was inadmissible to impeach the verdict on a motion for new trial.

   [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 284–287, 289, 302, 306; Dec. Dig. § 140.*]

2. NEW TRIAL (§ 140*)—PROCEEDINGS TO PROCURE—MISCONDUCT OF JURY.
   While the trial court should grant a new trial to prevent a miscarriage of justice, it should grant same on account of the misconduct of jurors only when such misconduct is shown by evidence which is clear and convincing, and not merely conjectural.

   [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 284–287, 289, 302, 306; Dec. Dig. § 140.*]

Action by the Broadway Building Company against Domenic Saladino. Verdict for defendant, and plaintiff moves to set same aside. Motion denied.

Sondheim & Sondheim, of New York City, for plaintiff.

Goldsmith, Rosenthal, Mork & Baum, of New York City, for defendant.

FINELITE, J. The jury having rendered its verdict in favor of the defendant in an action on a promissory note, and, after the same was duly recorded, certain colloquy ensued between the jurors and the court, wherein one of the jurors then, for the first time, made the remark that the verdict as rendered was not his verdict, but that he consented to the same because he did not want "to be locked up in the jury room overnight." The plaintiff contends that a verdict rendered in the manner as herein stated was not a proper verdict, and that the jurors were guilty of misconduct, and for that reason the verdict should be set aside and a new trial ordered. The defendant, in opposition to the motion, contends that the verdict having been rendered by the jury, and the same having been duly recorded, it is too late to set the same aside, and that the motion made by plaintiff should in all respects be denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes