Matter of Proving the Last Will and Testament of Dora Schroeder, Deceased, As a Will of Real and Personal Property.

(Surrogate's Court, Bronx County, December, 1916.)

Wills — probate of — what is meant by " end of the will " — statutes — rules — witnesses.

An instrument offered for probate as a last will was drawn up on a form printed on one sheet of paper so folded as to form two leaves, as fully set forth in the opinion. The testi-

mony conclusively showed that the propounded paper was in the form in which it was presented for probate, before the signatures of the decedent and subscribing witnesses were affixed, and that the writing appearing on the third page of the document was there at the time of subscription by the decedent. There was no opposition to the probate of the document and there was not the slightest indication of fraud.

In denying probate on the ground that the paper was not subscribed by the testatrix and that the two attesting witnesses did not sign their names as such, at the end of the will,

*Held,* that the paper offered for probate undoubtedly expressed fully the intention of the decedent; that it is not such intent but that of the legislature which governs; that although, in considering the legislative intent, much discussion arose in the courts whether the legislature meant the physical end or the so-called "literal," " natural," " logical," " speaking " or " constructive " end of the paper, nevertheless, prior to 1912 it was well settled in this state that the statute meant the physical end of the will.

That if there has been any more liberal rule adopted since the cases decided prior to 1912 that rule must be found in *Matter of Field,* 204 N. Y. 448; that while the court there limited the application of its prior decisions it did not overrule them or hold that unequivocally and under all circumstances the " end of the will " meant by the statute was " where the draftsman stopped writing in the consecutive order of composition.''

That the decisions of the Court of Appeals being controlling upon the surrogate, a due regard for the orderly administration of the law prevents this court from taking the responsibility of further broadening the rule as announced by that court, and that if limitations or qualifications are to be made on cases on which this opinion is based those limitations must proceed from a court of appellate jurisdiction.

PROCEEDINGS on an application for the probate of a will.

Salter & Steinkamp, for petitioner.

SCHULZ, S. The instrument offered for probate consists of one sheet of paper in size about eight

Surrogate's Court, Bronx County, December, 1916.　　[Vol. 98.

inches by twenty-six inches folded in such a way as to form two leaves, each about eight inches in width by thirteen inches in length, and being about as large as an ordinary page of legal cap. For the purpose of reference and identification, let us assume that the paper be held before one with the fold at the top. In that event I shall designate the page at which a reader would thus naturally first look, as page 1, the reverse side of the first leaf as page 2, the page immediately opposite page 2, as page 3, and the reverse side of the second leaf as page 4.

Upon page 1 there is a printed form of will in the usual phraseology, consisting of an introductory paragraph followed by a space about four inches in length; then a paragraph appointing a representative with necessary spaces for the name of the nominee, etc., followed by a testimonium clause. Below the latter there is another space and then follows an attestation clause. All of the spaces in the blank form are filled with typewriting, except the space after the testi- monium clause and before the attestation clause, where appear the signature and seal of the decedent and, to the left of her signature, the names of two persons in typewriting under a heading "Witnesses." The persons thus named have subscribed their names in the space below the attestation clause. The four-inch space above referred to is also completely filled with typewriting, providing for several bequests. Evidently it was not large enough to contain all of the provisions which the testator desired to make and so there are written in typewriting, immediately before the clause nominating the executrix, the words "Continued on next page."

Page 2 is blank and at the top of page 3 there appears in typewriting the statement "Continuation of my last will and testament." Below this heading

and also written with a typewriter are a number of provisions some of which are dispositive in character, subscribed and sealed by the decedent.

The question involved is whether the document has been subscribed by the testatrix "at the end of the will," and whether the two attesting witnesses have signed their names as witnesses " at the end of the will " as required by the statute (Decedent Estate Law, § 21, being Laws of 1909, chap. 18 and constituting Consol. Laws, chap. XIII).

A personal examination of the attesting witnesses convinces me that except as to those involved in the question stated, every formality prescribed by statute has been fully, and, I may say, carefully complied with, and that the writing which appears upon the third page of the document was there at the time of the execution of the paper and was signed and sealed by the decedent. No one opposes the probate of the propounded document. There is not the slightest indication of fraud, and the paper undoubtedly expresses fully the intention of this decedent.

If the intention of the testator govern when a construction of the statute is involved, as it would where a construction of the will after its probate is in question, I would unhesitatingly declare for this will. The authorities, however, without any exception that I know of, hold, that it is not the intent of the person attempting to make a will, but that of the legislature which governs under such circumstances. *Matter of* O'Neil, 91 N. Y. 516; *Matter of Blair,* 84 Hun, 581; affd., on opinion below, 152 N. Y. 645; *Matter of Andrews,* 162 id. 1; *Matter of Field,* 204 id. 448. In considering the legislative intent, much discussion has arisen as to whether the legislature meant the physical end or the so-called " literary," " natural," " log-

Surrogate's Court, Bronx County, December, 1916.        [Vol. 98.

ical," " speaking " or " constructive " end of the paper.

Prior to 1912, the law appears to have been settled in this state that the statute meant the physical end of the will; this I think is apparent from an examination of a few of the most important cases. *Sisters of Charity* v. *Kelly,* 67 N. Y. 409; *Matter of Hewitt,* 91 id. 261; *Matter of O'Neil, supra; Matter of Conway,* 124 N. Y. 455; *Matter of Blair, supra; Matter of Whitney,* 153 N. Y. 259; *Matter of Andrews, supra.* It was recognized that by such a construction of the statute, the testamentary intent has been frequently circumvented and that the attempt to thus prevent fraudulent additions to a will often worked more harm than good. This was clearly pointed out by Judge Cullen in *Matter of Andrews,* 43 App. Div. 394 at page 401, but the case in question was nevertheless affirmed by the Court of Appeals (*Matter of Andrews, supra*), indicating that notwithstanding the occasional hardship of the rule the court was evidently still of the opinion expressed in *Sisters of Charity* v. *Kelly, supra,* at page 416, that " The statutory provision requiring the subscription of the name to be at the end, is a wholesome one, and was adopted to remedy real or threatened evils. It should not be frittered away by exceptions. While its provisions should not be carried beyond the policy of the framers of it, that policy should not be defeated by judicial construction."

The facts in *Matter of Conway, supra,* are so analogous to those in the pending matter as to make that case controlling here. Under the law as settled by that case and the others above cited, the paper cannot be admitted to probate unless there is some later adjudication by the Court of Appeals which broadens the rule.

In 1912 in *Matter of Field, supra,* a will was before the Court of Appeals in which a printed form was used. In the space intended for bequests there were attached, by two pins, six sheets of paper bearing the handwriting of the decedent, written upon one side only and numbered by him at the top consecutively from 1 to 6, which contained the dispositive provision of the will. The signature of the deceased was written in the usual place on the right side of the bottom of the printed form, and the Court of Appeals reversed the order of the Appellate Division and the decree of the surrogate, and remitted the matter to the surrogate with directions to admit the will to probate. If there has been any more liberal rule adopted since the cases decided prior to 1912, that rule must be found in the *Field* case.

In the course of the opinion the court said (p. 457): "The natural end of a will is where the draftsman stopped writing in the consecutive order of composition, which * * * in the will before us succeeded the six numbered pages." Did the Court of Appeals by that language intend in effect to overrule all of the cases cited above and construe the statute as meaning that the end of a will, meant "where the draftsman stopped writing in the consecutive order of composition," no matter where upon the document that end might be found? To ascertain this and thus determine the scope and extent of the matter in question, we must read the sentence quoted not as an isolated declaration, but in connection with the other statements contained in the opinion of which it forms a part.

In the course of the opinion, the court said (p. 453): "So the six sheets of the paper in question are part of the body of the will, being physically incorporated

7.

Surrogate's Court, Bronx County, December, 1916.      [Vol. 98.

therein and not, as in some of the cases, *wholly without the body and merely referred to therein.* The essence of the paper subscribed is not the printed form alone, but the printed form with the six sheets so inserted therein as to become blended therewith at the point of insertion. Thus the *physical* and literary beginning, body and end of the instrument are the same, and the signature of the testator is found at the end.'' (P. 456) : '' In other words, we held in the *Whitney* case that when the instrument could not be read without turning the leaves backward and forward it did not comply with the statute. That is not this case, and while the facts are somewhat similar the principle involved cannot be extended, without danger,'' and finally at page 457 : '' The will before us when read consecutively as the mass of mankind would read it, has the signature at the *physical* and natural end thereof.  *  *  *  We base our decision largely on the natural and consecutive method of reading, without turning backward, or skipping a part and then looking forward only to turn backward again, in order to have the sense connected and continuous. Form should not be raised above substance in order to destroy a will and the substantial thing in this case is a paper which reads straightforward and without interruption from the beginning to the end and when thus read, the signature is found at the end.''

Looking now at the propounded document, it will be observed that, unlike the *Field* case, the writing on the third page is *not a part of the body of the will* and is not *physically incorporated therein,* but that it is *wholly without the body and merely referred to therein;* that the *physical* and literary beginning, body and end of the instrument, are not the same; that the will when read consecutively does not have the signature at the *physical* end thereof; and that it is

necessary in reading it *to skip* a part of the first page, look forward to the third page only *to turn backward again* to the first page in order to have the sense connected and continuous. Here, as in the *Whitney* case, the instrument cannot be read without *turning the leaves backward and forward,* and I do not read *Matter of Field* as overruling *Matter of Whitney.*

In *Matter of Field, supra,* while the court took occasion to limit the application of the previous authorities, if I understand the decision correctly, it did not hold that unequivocally and under all circumstances the end of the will meant by the statute was " where the draftsman stopped writing in the consecutive order of composition." It was not necessary to the decision to so hold. If I am correct, it follows that *Matter of Conway, supra,* where the facts were substantially the same as in the pending matter, is controlling upon me, and I must deny probate to the instrument, unless I wish to take upon myself the responsibility of further broadening the rule. This a due regard for the orderly administration of the law prevents me from doing, although it is only with the greatest reluctance that I reach the conclusion that I have no power to admit the paper. To paraphrase the language of Judge Cullen in *Matter of Andrews,* 43 App. Div. 394, 401, I may say that with every disposition to uphold the will now before me, I do not see how it can be done by this court in the light of the decisions of the Court of Appeals to which I have referred. If limitations or qualifications are to be made on the cases on which this opinion is based, those limitations must proceed from a court of appellate jurisdiction.

I have examined *Matter of Peiser,* 79 Misc. Rep. 668, but there the facts were substantially different from those which here prevail. It was not necessary to *skip*

Surrogate's Court, New York County, December, 1916. [Vol. 98.

a part of the will, look forward and then *turn backward again* in order to have the same sense connected. The ·matter before me is more like *Matter of Reisner,* 81 Misc. Rep. 101, where the court reached the same conclusion which I have reached in this matter.

Probate denied.