Birchard, C. J.
Upon the preceding statement of facts, our first inquiry is, whether the facts show a right in the defendants to retain the offices to which they were respectively elected. The 4th section of the sixth article of the constitution, declares that the appointment of all civil officers, not otherwise directed by the constitution, shall be made in such manner as may be directed by law. There is no provision in the constitution for the election of a county commissioner. The office is a creature of the statutes. Its duties are there defined, and to them we must look for the main guide in determining the rights of these litigants.
By the first section of the act establishing boards of county commissioners, passed March 5, 1831, (Swan’s St. 205,) it is enacted, “that there shall be established, in each organized county of this State, a board of commissioners, to be elected by the qualified electors of the county, at the annual election in October.” By the sixth section, each commissioner, before entering upon the duties of his office, is required to take an oath or affirmation faithfully and impartially to discharge the duties of a commissioner of the county in which he resides.
These provisions of the statute sseem to indicate that the office of commissioner of a county, can only be held by a resident of the county. And when we take into consideration the general *141 duties of the board of commissioners, the fact that they are the representatives of the county in its corporate capacity, that they are the corporate body in all suits and contracts, relating to interests and funds of the county, &c., we cannot doubt that non-residence within the county is a disqualification, which necessarily vacates the office.
It is, however, argued in behalf of the defendants, that under the provisions of the fourth section of the act, (Swan’s St. p. 205,) they were entitled to hold their offices for the period of six months after the passage of the act erecting the county of Auglaize. This section authorizes the associate judges to fill any vacancy in the office of county commissioner, occurring from any cause other than the expiration of the term for which he was elected; and the last two lines of the section read thus: “And the absence of any commissioner from the county for six months in succession, shall be deemed a resignation of the office.” Has this clause any such bearing on this case, as is contended for? We think not. It was intended to meet and provide- for a case, in all its essential features, entirely different — a case of neglect of duty, by continued absence from the county, without a change of residence. It is not necessary to extend the provisions of this act to anything else. The case designed to be provided for, is manifest; and it would be overstepping the legitimate bounds of judicial interpretation, to make the clause embrace more.
There remains, still, the question, what effect had the act creating the county of Auglaize, upon the residence of defendants ? By the agreed statement, they became residents of the territory constituting the new county. The power of the General Assembly to thus change the limits of a county, is undoubted. It follows, that persons residing within the limits of territory detached from the old, and attached to the new county, cease to be residents of the former, and become residents of the latter ; and unless there is some provision of the act erecting Auglaize county, modifying the apparent effect of these general principles, it would also follow that the defendants were both legislated out of office, on the 25th of February, 1848.
*142 But there are provisions of the act which exclude the con-c]ugjon that the General Assembly intended to effect a result summary. Vol. 46, p .130, L. L. <§> 10, of the act, provided for official action of these relators, as commissioners of Allen county, immediately upon the passage thereof. It made it their duty to re-organize certain townships or parts of townships effected by the act, conclusively showing that for a time, their respective offices were to survive the erection of the new county. Within this period, we are of opinion these defendants might have secured their titles to the offices of commissioner, by removing within the newly prescribed limits of Allen county. An intention so to remove was not sufficient. The intention should have been evidenced and accompanied by an actual removal.
What was the precise limit to this period of election is not given in any direct language, yet it may be satisfactorily ascertained by a careful consideration of the act itself, and of the general duties of the board of county commissioners. The 6th section of the act continued the duties and jurisdiction of the sheriffs, coroners, constables, and collectors of taxes of Allen county, on the territory detached therefrom, until the first Monday of March, 1848. All writs in that part of the territory were to be styled of the county of Allen, until the first of March, (f 7, p. 129,) and after that of the county of Auglaize.
To this period, the county of Allen in its corporate capacity was interested in the taxes collected and the costs, &c., made in her name, and there was much propriety in continuing the control of the corporate officers elected for the original territory, till that time. After that, there was very little propriety in subjecting the interests of Allen county to the control of those who then became exclusively identified with the new county of Auglaize.
A necessity existed for filling the board of commissioners on the first Monday of March, that being the time appointed by law for holding an annual session. The relators, by the agreed facts appearing to have been duly appointed and qualified, are entitled to the offices claimed by them respectively.

Judgment accordingly.