Summers, J.
In this state the right of disposing of property by will is given, and the manner of exercising it is prescribed by statute. The provisions of the Revised Statutes bearing upon the questions to be determined, may be briefly summarized as follows: Section 5914 prescribes who may make a will; Section 5916, providing how a will shall be executed, is as follows: “Every last will and testament (except nuncupative wills here *117 inafter provided for) shall be in writing, and may be hand-written or typewritten; and such will shall be signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and' subscribed, in the presence of such party, by two or more competent witnesses, who saw the testator subscribe, or heard him acknowledge the same.” Section 5926 provides, when application has been made to admit a will to probate, that the probate court shall cause the witnesses to such will, and such other witnesses as any person interested in having the same admitted to probate may desire, to come before it, and that the witnesses shall be examined in open court and their testimony reduced to writing and filed. Section 5929 is as follows: “If it shall appear that such will was duly attested and executed, and that the testator, at the time of executing the same, was of full age and of sound mind and memory, and not under any restraint, the court shall admit the will to probate.” Section 593° provides that when admitted to probate the will shall be filed in the office of the probate judge and recorded, together with the testimony. Section 5933 provides that if no person interested shall contest the will within two years, the probate shall be forever binding, saving to infants and persons of unsound mind or in captivity, a like period after the disabilities are removed. Section 5936 enacts that whenever the probate court shall receive from the clerk of the court of common pleas a certificate that a petition has been filed in the court- of common pleas to contest the *118 validity of any will recorded in the probate court, the probate court shall forthwith transmit to the court of common pleas the will, testimony and all papers relating thereto, with a copy of the order of probate and a certificate under the seal of the court. Section 5858 provides that a person interested in a will admitted to probate may contest the validity thereof in a civil action in the court of common pleas of the county in which such probate was had. Section 5859' provides who shall be parties. Section 5861 provides how an issue shall be made up, whether the writing produced is the last will or codicil of the testator or not, and that this issue shall be tried by a jury, and that the verdict therein shall be conclusive, unless a new trial be granted or the judgment be reversed or vacated. Section 5864 provides that “the party sustaining the will shall be entitled-to open and close the evidence and argument; he shall offer the will and probate, and rest; the opposite party shall then offer his evidence; the party sustaining the will shall then offer his other evidence; and rebutting testimony may be offered as in other cases.” Section 5862 provides that on the trial of such issue, the; order of probate shall be prima facie evidence of the due attestation, execution and validity of the will or codicil.
The first contention is that the will is not a valid will because it is partly in printing.
“Part Third” of the Revised Statutes includes Section 5916, and Section 4947 provides that in the interpretation of Part Third, unless the context shows that another sense was intended, the word “writing” includes printing. Before the *119 amendment of Section 5916, in 1895, 92 O- L., 189, that section did not contain the words “and may be hand-written or typewritten,” and the law then was that a will might be written or printed. Counsel contend' that since the amendment the context shows that another sense was intended, and that writing means only hand-written or typewritten, and that the effect of the amendment was not merely to authorize a typewritten will, but also to exclude a printed will. Typewriting has come into general use since the revision of the statutes in 1880, and the manifest intention of the legislature was to authorize its use in addition to handwriting and printing in the making of wills, and not to substitute typewriting for printing; so that a will is not invalid because it is partly in print.
The next question is, is the will signed at the end thereof by the party making the same? By the Act of 1816, 2 Chase’s Statutes, 929, and the Act of 1831 (29 O. L., 242), wills were required to be in writing, and signed by the party making the same, and not until the Act of 1840 (38 O. L., 120) took effect were wills required to be signed at the end thereof. This requirement is assumed to have been suggested by the English statute of wills, passed in 1837, although such a requirement had been previously enacted by statute in New York and in Pennsylvania. The English statute is to be found in 1 Vict.,-c. 26. Section 9 of that act provides that no will shall be valid unless “it shall be signed at the foot or end thereof by the testator, or by some other person in his presence, and by his direction.” In Williams *120 on Executors, 107 (7 Am. ed.), the learned author, speaking of this requirement, says:
“The will is required by that act to be signed ‘at the foot or end thereof.’ The Statute of Frauds merely requires that the will shall be ‘signed’; and it was held that a will in the testator’s own handwriting, commencing, T, John Styles, do declare this to be my last will, etc.,’ was sufficiently ‘signed’ within that statute, although not subscribed with his name. With a view, perhaps, to prevent future controversy as to whether a will so signed is a complete and perfect instrument, the statute of Victoria required that the signature of the testator shall be at the foot or end of the will.
“But questions of this kind do not appear to be altogether excluded by the operation of this enactment. And a new ground of contest arose out of it, as to. what may be considered a signing of the will at the end or foot thereof.
“Doubts arose whether a signature by the testator in the body of the testimonium or attestation clause was sufficient; and also, whether a signature below the latter clause, when it runs beneath the conclusion of the will, was a compliance with the act. On the question whether the will was well executed, if there was a folank space between the conclusion of the will and the signature of the testator, a lamentably large number of points and decisions occurred-. In the earlier cases Sir H. Jennor Fust put a very liberal construction on this part of the act. But afterwards that learned judge, in concurrence with the Judicial Committee of the Privy Council, felt it necessary to take *121 a more rigid view of this enactment, on the ground that it was intended to prevent any addition being made to the will after the deceased had executed it. And accordingly probate was refused in a great number of subsequent cases on this objection, and the intention of a great many testators unfortunately defeated.
“This led to the passing of the Stat. 15 Vict., c. 24.”
The amendatory act passed in 1852, 15 Vict., c. 24, specifies with much particularity what shall be, respecting the position of the testator’s signature, the foot or end' of the will; but as no similar changes were made here, the provisions of that act can not aid in the interpretation of our statute.
The object of this requirement was the same here as in England — to insure the identity of the instrument, and to prevent fraudulent additions to or alterations of the instrument. Glancy et al. v. Glancy et al., 17 Ohio St., 135; Baker v. Baker et al., 15 Ohio St., 222.
Following the English statute, many of the states enacted similar requirements. In Pennsylvania, the earlier statute of 1833 contains such a requirement, and in Wineland’s Appeal, 118 Pa. St., 37, where a will signed by the testator, but containing a clause, immediately following the signature, and appointing executors, was under consideration, Paxson, J., says: “Our act of 1833, as well as the statute of Victoria, are in part borrowed from the British statute of frauds, two sections of which have been so evaded by judicial construction as to be practically repealed. *122 We do not propose that the Act of 1833 shall meet with the same fate. The legislature have laid down a rule so plain that it can not be evaded without a clear violation of its terms. No room is left for judicial construction or interpretation. It says a will must be signed at the end thereof, and that’s the end of it.”
The statute of New York enacts that every last will' and testament of real or personal property, or both, shall be subscribed by the testator at the end of the will. In reviewing the decisions in that state in Matter of Andrews, 162 N. Y., 1, Bartlett, J., says: “In Sisters of Charity v. Kelly, 67 N. Y., 409, it was held that the provision of the statute requiring the testator to subscribe 'at the end of the will’ means the end of the instrument as a completed whole; and whére the name is written in the body of the instrument, with any material portion following the signature, it is not properly subscribed, nor can it be claimed that the portion preceding the signature is valid as a will.
“In Matter of O'Neil, 91 N. Y., 516, a printed blank was used, and the formal commencement was printed on the first page, and the formal termination printed at the foot of the third page. The entire blank space was filled with writing, and, apparently for want of room, a portion of a paragraph containing material provisions was carried over to, and the paragraph finished at, the top of the fourth page. The two portions were not, however, sought to be connected by means of a reference, or anything indicating their relation to each other. The name of the testator was written at the end of the printed form, and the *123 names of the witnesses written below the formal attestation clause on the third page. This court held that there was no legal subscription of the will, and affirmed the judgment denying probate.
“In Matter of Conway, 124 N. Y., 455, a blank form was used, the whole of which was upon one side of the paper. A space was left for the dispositions to be made, preceded by the words, T give, devise and bequeath my property as follows.’ The blank space was filled up by three complete devises. At the end of the last were underlined, in parentheses, the words, ‘Carried to back' of will.’ Upon the back of the sheet was written the word, ‘Continued.’ Following it were various bequests, and then the words, ‘Signature on face of the will.’ The signature of the testator appeared at the end of the testimonium clause on the face of the paper, and those of the witnesses under the attestation clause. It was held by the Second Division of this court that there was not such a subscription and signing by the testator as required by the statute, and that the will had been improperly admitted to probate.
“In Matter of Whitney, 153 N. Y., 259, it was held that a will drawn upon a printed blank, covering only one page, and signed by the t^tator and subscribing witnesses at the foot of the page, is not subscribed by the testator at the end of the will, as required by the statute, when the blank space in the printed form is filled up by subdivisions marked, respectively, ‘First’ and ‘Second,’ followed by the words, ‘See annexed • sheet’; and additional subdivisions, marked, respectively, ‘Third’ and ‘Fourth,’ are written on a separate *124 piece of paper attached to the face of the blank, immediately over the first and second subdivisions, by removable metal staples. It was held that the question presented was not an open one in this court, and that the will was not legally subscribed.
“In Matter of Blair, 84 Hun, 581, this court affirmed the judgment of the general term, First Department, on the opinion below, which reversed a decree of the surrogate’s court admitting the will to probate. This instrument consisted of eight pages. The testator signed at the bottom of the seventh page, and the witnesses signed at .the end of a proper witnessing clause at the top of the eighth page. After the place for the signatures of the witnesses, but before they were actually signed or the will executed, a clause was added directing the executor to sell at private sale a certain piece of real estate, and to devote the proceeds of sale to liquidating any deficiency in interterest or cash bequests under the will. The will was then executed, as before stated, and the testator signed the added clause, but the witnesses did not. In re Blair’s Will, 152 N. Y., 645.”
And in that case, Matter of Andrews, supra, it was held that a will, drawn on a printed blank, beings one piece of paper folded so as to make a sheet of four leaves, with the attestation clause printed at the top of the second page, and executed at that point, so that the first two pages make a complete will, is not subscribed at the end as required by the statute, where the third page contains further dispositions of property, even though the third page has been marked “2nd page” by the draughtsman, and the second page *125 has been marked “3rd page.” In the opinion, Bartlett, J., says: “It was suggested on the argument of this case that the effect of the statute of wills, as strictly construed by this court, is to defeat the intention of many testators, while the fraudulent addition to wills was a crime of rare occurrence. The fallacy of this argument consists in overlooking the fact that the number of frauds prevented by our wise and simple statute can never be known. We might as well ask how many commercial crimes have been prevented by the statute of frauds. * * * 'It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements. It is better this should happen under a proper construction of the statute, than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills.” It is to be observed that in this case the question was re-examined in New York because the lower courts, while yielding to the authority of the Court of Appeals, had questioned the correctness of its conclusions, and in concluding his opinion the learned judge says: “The defeat of testamentar)'- intention in a few cases is not due to the statute, or the construction of it by the courts, but to the fact that scriveners and other laymen, ignorant of the simple and clear provisions of the statute, are permitted to draw wills. * * * We have to say in conclusion that it is quite possible, we have given to this appeal undue importance, involving, as it does, a *126 question of law settled in this court; but we desire to express in the most emphatic manner our approval of the statute of wills as now construed.”
In Soward, etc., v. Soward, etc., 1 Duvall, 126, where it is held that a will that was written on a sheet of paper which was folded in the form of a letter and sealed with wax, and then attested by three witnesses, who wrote their names on the outside of it as witnesses at the request of the testator, was not attested as required by statute, Chief Justice Duvall says: “The statute does not more imperatively require two witnesses, than it requires them to subscribe their names to the will; and there would be as much propriety in dispensing with the one as the other, for the purpose of mitigating the hardship of particular cases, resulting' generally from the ignorance or carelessness of the testator. Thus, step by step, under the pressure of hard cases, all the forms of the law which were adopted as the surest means of protection against imposition and fraught might, and would, soon become so modified by judicial construction as to lose all their efficacy. ‘Care ought to be taken,’ says Chief Justice Tindal ‘in interpreting the statute of frauds, that its efficacy shall not be destroyed by admitting one exception after another, each being weaker than that by which it was preceded.’ ”
And in Smee v.. Bryer, 6 Moore, P. C., 404, Lord Langdale says: “It may happen, even frequently, that genuine wills, namely, wills truly expressing the intentions of the testators, are made without observations of the required forms; and wheneyer that happens, the genuine intention is *127 frustrated by the act of the legislature, of which the general object is to give effect to the intention. The courts must consider that the legislature, having regard to all probable circuriistances, has thought it best, and has therefore determined,, to run the risk of frustrating the intentions sometimes, in preference to the risk of giving effect to or facilitating the formation of spurious wills, by the absence of forms. It is supposed, and that authoritatively, that the evil of defeating the intention in some cases, by requiring forms, is less than the evil probably to arise by giving validity to wills made without any form in all cases.”
In the case before us, the will is not signed by the testatrix at the- end thereof.
The testimonium clause is as follows:
“In testimony whereof, I have set my hand to this my last will and testament, at Lakewood, Ohio, this Sixth day of June, in the year. of our Lord One Thousand Nine Hundred and Three.
The obvious purpose for which this blank line was left was for the signature of the testatrix, and it was intended as the end of' the will. The absence of her signature there not only discloses that the will is not signed by her at the end thereof, but also implies that she did not sign it at all. The attestation clause signed by the witnesses recites that the foregoing instrument was signed by the said Arminda S. Nicholson in our presence, but this does not change the fact, and in the absence of a signature is without legal effect. If a *128 scrivener had prepared the will and had written her name where it appears in the attestation clause, her name there would have been merely descriptio personae; and when it is shown that ■the testatrix was her own scrivener, the natural presumption is that it was so intended; and even if the fact was that the testatrix wrote her name there, intending by that act to sign her will, still her signature would not be at the end of the will, and her intention could not have the effect of transposing it. The question is, not what did the. testatrix intend, but what did she do?
Counsel for defendants in error contend that the record does not present these questions, because the statutes enact that “the party sustaining the will shall offer the will and probate, and rest; the opposite party shall then offer his evidence; the party sustaining the will shall then offer his other evidence; and rebutting evidence may be offered as in other cases.” And further, that “on the trial of such issue, the order of probate shall be prima facie evidence of the due attestation, execution and validity of the will or codicil.” And, therefore, that the court erred in directing a verdict when the defendant rested, as required by the statute. True, the statute does enact that the order of probate shall be prima facie evidence; but the legislature did not contemplate that a will not signed, or not signed at the end thereof, or not witnessed, ever would be ordered to be probated; and so the matter is not controlled by the statute. It was assumed that the end of the will was self-evident, and the statute was adopted in order to leave no room for the *129 abuses and litigation that had been invited by the efforts of the courts to give effect to the intentions of testators. When the facts are known, the question whether the will is signed at the end is one of law; and when the will itself shows that it is not signed or attested as required by the statute, it becomes the duty of the court so to instruct the jury. The statute enacts that the order of probate shall be prima facie evidence; and so it is; but it also enacts that the defendant shall offer the will, which he did; and, it appearing from the will itself that it was not signed at the end thereof, the prima facie case made by the order of probate was overcome. But if it be said that this is technical, and that what the legislature manifestly intended was that the will and the order of probate should make a prima facie case, then we have only to say that the legislature could not have intended that it ever should be left to a jury to determine that a will not signed as required by the statute was valid because they found that the testator intended to comply with the statute. Where there is an ambiguity, like that in the will under. consideration in Irwin et al. v. Jacques et al., 71 Ohio St., 395, where there was a dispositive clause written in the margin on the last page of the will, and above the signature of the testator, and in no manner connected with the body of the instrument by any words, marks or character, as a reference to indicate where the marginal matter is to .be read in relation to the other provisions of the will, evidence is necessary in order to determine the end of the will; but where there is no ambiguity that may be explained, but only an omission that *130 can not be cured, a defendant can not be benefited by testimony or prejudiced by its rejection.
The judgment of the circuit court is reversed and that of the court of common pleas is affirmed.

Reversed.

Shauck, C. J., Price and Davis, JJ., concur.