In the Matter of the Estate of MARY A. FICKEN, Deceased.

Surrogate's Court, Kings County, April 13, 1932.

*Rudolph Dugan,* for the petitioner, executor.

*H. Bernard Kaye,* special guardian.

WINGATE, S. The contested question for decision in this probate proceeding is the perennial one as to whether a holographic will on a printed form is properly executed in accordance with the mandates of section 21 of the Decedent Estate Law. The form here employed is of the familiar shape and size, consisting of two sheets joined together at the tops of what are customarily viewed as the first and third pages. For convenience of reference and description the portion of the blank containing the printed introductory wording will be called the first page; the reverse of this sheet the second;

the next portion of the paper, the top of which is joined to the first page, will be called the third; the back of this the fourth.

The first page contains the usual printed introductory phraseology and thereafter a considerable number of testamentary gifts in testatrix's handwriting. These are continued on the second page. On the second page, below the strictly donative clauses, appears a signature, identified as that of the testatrix, following which is a holographic direction respecting a tombstone. Beneath this the testatrix's signature again appears. This is followed by a jurat and the signature of a notary. The third page is blank for half its length, whereupon the following words and figures appear, those in printing being italicized, the balance being in the handwriting of testatrix:

" *I hereby appointed* my nephew Mr. Charles Willis as executor, Roslyn, Warner Ave., N. Y., *to be executor of this my last will and testament* of Mary A. Ficken, Brooklyn, N. Y. *In witness whereof I have hereunto subscribed my name and affixed my seal* the 25 of February, *day of* ..................*in the year one thousand nine hundred and* 30, Nineteen Hundred and Thirty."

Following this is the signature, seal and stamp of the notary, and below the latter is the attestation clause in usual form, partially completed in handwriting, and beneath, the signatures and addresses of three witnesses.

Objection is made by the special guardian for unknown heirs on two grounds: *First,* that the writing on the second page begins at the portion of the sheet nearest to the fold where the first and second pages are joined to the third and fourth, instead of at the reverse end. The *second* objection is directed to the alleged failure of the testatrix to sign below the clause in which she appoints her executor.

The argument respecting the former objection is to the effect that the natural manner of reading a document of this type is, upon completing the reading of the first page, to turn this sheet upside down in relation to its position when the first page is read, in order to read the second page.

In the opinion of the court this objection has no merit. Whereas the method of handling indicated may be the customary manner of reading such documents by the legal profession when they are held in the hand of the reader, it would be entirely natural for any person, particularly a lay individual, in writing out such a document, to fold the sheet over on completing the writing on the first page and to continue such writing in the same relative position respecting the fold in the entire paper as that employed when the first page was written.

The court is unfamiliar with any authority which has gone to the length of holding that where the provisions of a will appear in order on consecutive pages, the instrument would be invalidated by reason of the fact that the writing on any one of the sheets was upside down. If such a rule were established, it might well follow that if a will were typewritten on a number of different sheets, as is the customary practice, a clerical error in binding one of these sheets upside down would invalidate the entire instrument. Any rule which might produce such a result would amount to an obvious *reductio ad absurdum*.

Certainly none of the cases cited by the special guardian in any way remotely indicates that such a decision was contemplated by the courts rendering them. In *Matter of Andrews* (162 N. Y. 1) the attestation clause in the printed form was at the top of the second page of the first sheet, at which point the will was executed, but testamentary dispositions were added on the third page. In *Matter of Whitney* (153 N. Y. 259) a reference was made above the signature and attestation, " see attached sheet," and gifts were made in the sheet attached. The facts in *Matter of Conway* (124 N.Y. 455); *Matter of O' Neil* (91 id. 516); *Matter of Ryan* (252 id. 620); *Matter of Schroeder* (98 Misc. 92), and *Matter of Lowden* (106 id. 707) were substantially the same. Those decisions obviously have no bearing on the present question, since in each there were dispositive directions following testator's signature, wherefore the will was not signed at its end as the statute requires.

As the Court of Appeals said in *Matter of Field* (204 N. Y. 448, at p. 457): " Form should not be raised above substance in order to destroy a will and the substantial thing in this case is a paper which reads straightforward and without interruption from the beginning to the end and when thus read the signature is found at the end."

The question in the case at bar as to whether the testatrix signed the instrument at the end, as required by statute, is a more serious one. As has been noted, the third page contained the appointment of the executor. This has frequently been held to be an integral part of the testamentary act which must precede the signature, if the will is to be admitted to probate. (*Matter of Tyner,* 138 Misc. 192, and cases cited.) It follows, therefore, that neither of the signatures of the testatrix on the second page of the instrument can be considered valid subscriptions within the terms of the statute. It is the contention of the proponent, however, that the signature of the testatrix immediately preceding the *in testimonium* clause as above shown is a valid subscription. It has been stated that no adjudicated cases could be found in the books in which such

a contention was sustained. It appears, however, that this possibility was directly considered by the Court of Appeals in the early case of *Sisters of Charity* v. *Kelly* (67 N. Y. 409, 413, 414), and the decision contained an unmistakable dictum, that if the signature of a testator inserted in a holographic will in such a manner was intended by him to be a subscription to the instrument, it would comply with the provisions of subdivision 1 of section 21 of the Decedent Estate Law. In the *Kelly* case the will was denied probate for want of sufficient demonstration of acknowledgment by the testator. The question was similarly treated in *Matter of Rudolph* (180 App. Div. 486, 487, 488), where the will was denied probate on the ground of lack of demonstration that the testator had intended his name, thus included, to serve as the subscription of the document. However, in *Matter of Miller* (119 Misc. 4); *Matter of Jarvis* (124 id. 563), and *Matter of Case* (126 id. 704) wills in which the only subscription was contained in the attestation clause were admitted to probate, and a like result was reached in *Matter of Acker* (5 Dem. 19); *Matter of Noon* (31 Misc. 420), and *Matter of De Hart* (67 id. 13), where the only subscription was contained in the *in testimonium* clause. The last cited case contains a particularly able and illuminating discussion of the general subject.

The determination of the matter, therefore, resolves itself wholly into a question as to whether the testatrix intended the writing of her name at the noted point preceding the *in testimonium* clause to be a subscription of the instrument, since the acknowledgment, declaration and signature by attesting witnesses at the end of the will at testatrix's request are established beyond controversy. On this subject the testimony of the subscribing witness Mary B. Straton (S. M. p. 27) is clear and decisive to the effect that she did, and that of Samuel S. Plotkin (S. M. p. 21) is inferentially to the same effect. Under the rules of the cases last cited, therefore, the court determines that the instrument was executed in conformity with the provisions of the statute and it will be admitted to probate.

Proceed accordingly.