In the Matter of the Estate of ANNIE CARNEY, Deceased.

Surrogate's Court, Kings County, February 19, 1934.

*Charles W. Philipbar*, for the proponent.

*John Edward Field* [*Selig Kaplan* and *Samuel M. Lipp* of counsel], for the contestants.

WINGATE, S. This is a motion to set aside a verdict admitting an alleged will to probate. The propounded instrument was written on the usual blank form consisting of two sheets of paper joined at the top, as described in *Matter of Ficken* (143 Misc. 407). At the time it was presented for probate the instrument was in three pieces, the last half of the second sheet, containing testatrix's signature and the attestation of the instrument, being detached

from the main portion of the document and an additional piece, about three and a half inches square, which had formed a part of the immediately preceding portion, also being torn off. On the back of the last-mentioned fragment were written the name and address of decedent's attorney, who had originally drawn the will.

The dispositive provisions of the instrument left a number of general legacies, among others to a Mrs. Dunnigan who was named as executrix and a residuary legatee.

For some time shortly prior to her death the decedent had resided with this Mrs. Dunnigan, but a few days before she was stricken with her mortal illness had taken a room at the home of a Mrs. Lang, who was a total stranger to her. Certain testimony, which was partly contradicted, tended to show that her departure from Mrs. Dunnigan's home was forced and was attended by unpleasant circumstances.

The change in residence was arranged by a Miss Stoebe, who is a playground director in the city department of parks. She was in no way related to decedent, but appears to have taken a kindly interest in her welfare. She was not a legatee under the will, although her sister was named as a general legatee in a small amount.

At the time the decedent moved from the house of Mrs. Dunnigan to that of Mrs. Lang, she had with her, among other pieces of luggage, a satchel, and it was in this that the fragments of the will were found.

The story of its finding was related with substantial agreement by Mrs. Lang and Miss Stoebe. The latter had been requested by decedent's relatives to see to the funeral arrangements. She accordingly went to Mrs. Lang's home, and together they took the bag into the dining room and emptied its contents upon the table. Miss Stoebe took certain papers necessary for attention in connection with the funeral, and also the small piece of paper upon which the name of decedent's attorney was written, which had formed a part of the will. She testified that at the same time she saw the other pieces of the will and that they were then in the same condition as when presented to the court. The remaining contents of the satchel were thereupon returned to it.

The following day she again called, this time with a Mrs. Bull, who was interested in the decedent but neither related to her nor a legatee under the will, and they again went through decedent's effects, and on this occasion took the remaining pieces of the will and gave them to one of decedent's relatives.

The testimony of Miss Stoebe, Mrs. Lang and Mrs. Bull, as hereinbefore summarized, was in no way impeached or shaken upon

the record, either by cross-examination or otherwise. In this situation the language of the Court of Appeals in *Hull* v. *Littauer* (162 N. Y. 569, 572) becomes pertinent: " Where \* \* \* the evidence of a party to an action is not contradicted by direct evidence, nor by any legitimate inferences from the evidence, and is not opposed to the probabilities; nor in its nature, surprising, or suspicious, there is no reason for denying its conclusiveness." (See, also, *Chapin-Owen Co., Inc.,* v. *Yeoman,* 233 App. Div. 492; *Deregibus* v. *Saracco,* 225 id. 354, 355; *Molloy* v. *Whitehall Portland Cement Co.,* 116 id. 839, 841; *Bolster* v. *New York City Ry.,* 113 N. Y. Supp. 770, not otherwise reported.)

The demonstration of the record is, therefore, that the will was executed, was continuously in the possession of decedent up to the time of her death and was found in a mutilated condition after her death. Aside from the decedent herself, there is not the slightest suggestion that any one had access to it except Mrs. Lang and Miss Stoebe. The latter two have testified categorically that they did not mutilate it. Their testimony of its finding is mutually corroborative and neither was in any way impeached. Furthermore, neither had any conceivable motive for its destruction since neither would profit directly or indirectly by rendering it impossible of probate, as neither was a statutory distributee or shown to be interested in any person who was. Not only was no motive for the destruction discernible, but the accomplishment of acts which would prevent probate would deprive Miss Stoebe's sister of a distributive benefit which she would not otherwise enjoy.

On the other hand, if the testimony respecting the decedent's unpleasant enforced separation from the Dunnigan household were to be accepted, she had a very real motive for the destruction of the will in order to prevent the benefit of Mrs. Dunnigan, who, as noted, was the executrix and a general and residuary legatee thereunder.

However this may be, the finding of a mutilated will among the effects of a competent testator raises a strong factual inference, sometimes loosely called a presumption (*Matter of Callahan,* 142 Misc. 28, 36; affd., 236 App. Div. 814; affd., 262 N. Y. 524; *Matter of Philp,* 19 N. Y. Supp. 13, 15; reported by memorandum only, 64 Hun, 635), that the acts of mutilation were performed by the testator *animo revocandi.* (*Matter of Hopkins,* 172 N. Y. 360, 363; *Matter of Clark,* 1 Tuck. 445, 453–460, and cases cited; *Matter of Francis,* 73 Misc. 148, 158; *Brazill* v. *Weed,* 115 id. 546, 554; *Matter of Casey,* 126 id. 749, 753.)

On the facts demonstrated by the record, the language of the Court of Appeals in *Collyer* v. *Collyer* (110 N. Y. 481) becomes

extremely pertinent. It says (at p. 485): " The evidence simply shows that several of her next of kin were about her for a short time before her death and in her house afterward, and thus may have had opportunity to find and destroy the will. But all such persons were called as witnesses and positively denied any knowledge of the will or any interference therewith, and thus there was not enough evidence even to raise a fair suspicion that the will had been fraudulently destroyed."

The facts in the case at bar are even stronger, since the only persons who are shown to have had access to the document were total strangers in blood, with no conceivable motive to make the will ineffectual.

It follows that the verdict of the jury was contrary to the evidence and the weight thereof and that the motion to set aside the verdict must be granted.

Proceed accordingly.